Timothy J. Mulreany
MD Bar No. 8812160123
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
tmulreany@cftc.gov
(202) 418-5306

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANCIER OBANDO PINILLO,**<br><br>**Defendant.** | **Civil Action No.: 4:24-cv-05161-SAB**<br><br>**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT FRANCIER OBANDO PINILLO AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**March 31, 2026**<br>**Without Oral Argument** |

## TABLE OF CONTENTS

I. INTRODUCTION....1

A. The Parties ....1

B. The Solanofi Entities....2

II. RELEVANT PROCEDURAL HISTORY ....3

A. CFTC v. Pinillo ....3

B. Parallel Criminal Matter-USA v. Pinillo, No. 4:24-cr-06032-SAB....4

III. PLAINTIFF HAS MET THE PROCEDURAL REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT....5

IV. STATEMENT OF RELEVANT FACTS....6

A. Defendant Made False Statements to Customers....7

B. Defendant Did Not Trade On Behalf of Customers....8

C. Defendant Misappropriated Customer Funds and Assets....9

D. Defendant's Misrepresentations and Omissions....10

V. ARGUMENT....11

A. The CFTC Has Established Jurisdiction and Venue....11

B. Default Judgment is Warranted Against the Defendant....12

C. The Eitel Factors Strongly Favor Entry of Default Judgment against the Defendant ....13

1. Factor 1: The CFTC Will Suffer Prejudice Absent Entry of Default Judgment....13

2. Factors 2 and 3: The Merits of the CFTC's Claims and Sufficiency of the Complaint Weigh in Favor of Default Judgment....14

3. Factor 4: The Sum of Money at Stake in the Action is Not Disproportionately Large....21

4. Factor 5: There is Minimal Possibility of Dispute Concerning Material Facts ....23

5. Factor 6: There is No Evidence that Defendant Defaulted Due to Excusable Neglect ....23

6. Factor 7: Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment ....24

VI. THE REMEDIES PLAINTIFF SEEKS ARE APPROPRIATE ....25

A. A Permanent Injunction is Appropriate ....25

B. Restitution ....27

C. Civil Monetary Penalty ....29

D. A Permanent Trading Ban is Appropriate ....31

VII. CONCLUSION ....33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldabe v. Aldabe*,
616 F.2d 1089 (9th Cir. 1980)........................................................................ 12

*Bd. Of Trs. Of Laborers Health & Welfare Tr. Fund for N. Cal. v. Cazadores Constr., Inc.*,
2018 WL 986020 (N.D. Cal. Feb. 20, 2018) ..................................................... 22

*Bd. of Trs. of Sheet Metal Workers v. Moak*,
2012 WL 5379565 (N.D. Cal. Oct. 31, 2012)..................................................... 14

*Bd. of Trs. of Sheet Metal Workers v. Superhall Mechanical*,
2011 WL 2600898 (N.D. Cal. Jun. 30, 2011)..................................................... 22

*Benny v. Pipes*,
799 F.2d 489 (9th Cir. 1986)...................................................................... 12,13

*CFTC v. Arrington*
2014 WL 685331 (D. Neb. Jan. 28, 2014)......................................................... 30

*CFTC v. Battoo,*
2016 WL 3059856 (N.D. Ill. Jan. 11, 2016)....................................................... 30

*CFTC v. Carmona,,*
2024 WL 4744021 (C.D. Cal. October 21, 2024)............................................... 22

*CFTC v. Co Petro Mktg. Grp., Inc.*,
502 F. Supp. 806 (C.D. Cal. 1980) ................................................................... 26

*CFTC v. Driver*,
877 F. Supp. 2d 968 (C.D. Cal. 2012) .................................................25-26,30-31

*CFTC v. Emerald Worldwide Holdings, Inc.,*
2005 WL 1130588.............................................................................................. 28

*CFTC v. Gelfman Blueprint, Inc.*,
2018 WL 6320656 (S.D.N.Y. Oct. 16, 2018) ..... 17

*CFTC v. Glob. Precious Metals Trading Co*.,
2013 WL 5212237 (S.D. Fla. Sept. 12, 2013) ..... 17

*CFTC v. Hunt*,
591 F.2d 1211 (7th Cir. 1979) ..... 27

*CFTC v. Kraft Foods Grp*.,
153 F. Supp. 3d 996 (N.D. Ill. 2015) ..... 20

*CFTC v. Leighton,*
*2013 WL 4101874 (C.D. Cal. July 8, 2013) ..... 28*

*CFTC v. McDonnell*,
287 F. Supp. 3d 213 (E.D.N.Y. 2018) ..... 16

*CFTC v. McDonnell*,
332 F. Supp. 3d 641 (E.D.N.Y. 2018) ..... 17

*CFTC v. My Big Coin Pay*,
334 F. Supp. 3d 492 (D. Mass. 2018) ..... 16

*CFTC v. Premium Income Corp.,*
2007 WL 429092 (N.D. Tex. Jan. 26, 2007) ..... 30

*CFTC v. R.J. Fitzgerald*,
310 F.3d 1321 (11th Cir. 2002) ..... 20

*CFTC v. Safevest LLC,*
2009 WL 2448114 (C.D. Cal. July 13, 2009) ..... 32

*CFTC v. Schiera,*
2006 WL 4586786 (S.D. Cal. Dec. 11, 2006) ..... 22

*CFTC v. Tallinex*,
2018 WL 3350347 (D. Utah July 9, 2018) ..... 18

*CFTC v. Tinoco*,
2022 WL 1670031 (W.D. Tex. Mar. 25, 2022) ..... 18

*CFTC v. Trimble*,
No. 11–cv–02887-PAB-KMT, 2013 WL 317576 (D. Colo. Jan. 28, 2013) ....... 29

*CFTC v. WorldWideMarkets, Ltd.*,
2022 WL 3535993 (D.N.J. Aug. 18, 2022) ........................................................ 17

*Danning v. Lavine*,
572 F.2d 1386 (9th Cir. 1978)........................................................................ 14

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986)........................................................................Passim

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir.1977)........................................................................... 15

*Halsey v. Colonial Asset Mgmt.*,
2014 WL 12601015 (C.D. Cal. July 17, 2014)............................................ 14, 24

*In re BFXNA Inc.*,
2016 WL 3137612 (June 2, 2016) .................................................................. 16

*In re Staryk*,
[2003- 2004 Transfer Binder], Comm. Fut. L. Rep. (CCH) ¶ 29,826 (CFTC July 23, 2004)........................................................................................................ 32

*Miller v. CFTC*,
197 F.3d 1227 (9th Cir. 1999)......................................................................... 29

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F. Supp. 2d 1172 (C.D. Cal. 2002) ...................................................... 13, 24

*PepsiCo, Inc. v. Los Potros Dist. Ctr., LLC*,
2008 WL 942283 (D. Ariz. Apr. 7, 2008) ....................................................... 21

*PepsiCo, Inc. v. Triunfo-Mex. Inc.*,
189 F.R.D. 431 (C.D. Cal. 1999) .................................................................... 13

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946)......................................................................................... 27

*SEC v. DiBella*
2017 WL 818604 (D. Conn. Nov. 29, 2005) .................................................... 19

*SEC v. Fortitude Grp.*,
2005 WL 3215899 (N.D. Ill. Nov. 29, 2005) .................................................. 14

*SEC v. Hasho*,
784 F. Supp. 1059 (S.D.N.Y. 1992)............................................................. 19

*SEC v. Holschuh*,
694 F.2d 130 (7th Cir. 1982)...................................................................... 32

*SEC v. Pedras*,
2014 WL 12597332 (C.D. Cal. April 16, 2014) ............................................. 28

*SEC v. Zandford*,
535 U.S. 813 (2002) ................................................................................ ...19

*Sky Billiards, Inc. v. Loong Star, Inc.*,
2016 WL 6661175 (C.D. Cal. Mar. 17, 2016)........................................... 13, 23

*Stephen Bronte, Advisors, LLC v. CFTC*,
90 F. App'x 251 (9th Cir. 2004) ................................................................. 24

*TeleVideo Sys., Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987).................................................................. 13, 23

*U.S. v. Rivera*,
2003 WL 22429482 (C.D. Cal. July 18, 2003)............................................... 12

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194, 1202 (11th Cir. 2001)......................................................... 20

**Statutes**

7 U.S.C. § 1a(9) .... 16
7 U.S.C. § 9(1) .... Passim
7 U.S.C. § 13a-1 .... 29
7 U.S.C. § 13a-1(a) .... 11, 25
7 U.S.C. § 13a-1(c) .... 31, 32
7 U.S.C. § 13a-1(d)(1)(A) .... 29
7 U.S.C. § 13a-1(d)(3) .... 27
7 U.S.C. § 13a-1(e) .... 12
7 U.S.C. §§ 1-26 .... 1
28 U.S.C. § 1331 .... 11
28 U.S.C. § 1345 .... 11
28 U.S.C. § 1961(a) .... 30
50 U.S.C. App § 521 .... 5

**Rules**

Fed. R. Civ. P. 12(a)(1)(A)(i) .... 3
Fed. R. Civ. P. 55 .... 5
Fed. R. Civ. P. 55(a) .... 1, 4, 12
Fed. R. Civ. P. 55(a)(1) .... 3
Fed. R. Civ. P. 55(b) .... 5
Fed. R. Civ. P. 55(b)(1) .... 1
Fed. R. Civ. P. 55(b)(2) of the Federal Rules of Civil Procedure .... 1, 12

**Regulations**

17 C.F.R. pts. 1–190 (2024) .... 2
17 C.F.R. § 143.8(b)(1) (2024) .... 29
17 C.F.R. § 180.1(a) .... 16, 17, 20
17 C.F.R. § 180.1(a)(1)–(3) (2024) .... 1, 17, 25
17 C.F.R. § 180.1(a)(1)-(3) (2024) .... Passim

**Other Authorities**

*Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41,398 (July 14, 2011) .... 19, 20

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") respectfully moves this Court to enter judgment by default against Defendant Francier Obando Pinillo ("Pinillo" or "Defendant") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. On January 30, 2025, the Clerk entered a default against the Defendant pursuant to Fed. R. Civ. P. 55(b)(1) and Local Civil Rule 55(a). ECF No. 5. In support of this motion, the CFTC submits the attached Memorandum of Points and Authorities, and the declarations of CFTC attorney Karen Kenmotsu ("Kenmotsu Dec.") and CFTC investigator George Malas ("Malas Dec."). The CFTC seeks a default judgment order that: (1) finds that the Defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) (2024); (2) enters a permanent injunction against Defendant; (3) restitution in the amount of $1,552,060.77; (4) civil monetary penalties in the amount of $4,656,182; and (5) such other equitable relief as this Court deems appropriate.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. The Parties

Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. §§ 1-26, and the

Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2024). ECF No. 1 at ¶ 11.

Defendant Francier Obando Pinillo formerly resided in Pasco, Washington and is currently incarcerated at the Benton County Jail in Kennewick, WA. During the period November 1, 2021 to December 31, 2023 (the "Relevant Period"), the Defendant was the self-described "CEO" of Solanofi and did business as the sole proprietorships "Solanofi", "Solano Partners LTD" and "Solano Capital Investments" (collectively, "Solanofi Entities"). Defendant was also the former pastor of Tiempos de Poder Church in Pasco, Washington. Defendant has never been registered with the Commission in any capacity. ECF No. 1 at ¶ 12; Malas Dec. at ¶ 7a. On November 7, 2024, the U.S. Attorney's Office for the Eastern District of Washington filed an indictment against Pinillo that charged him with twenty-five counts of wire fraud and one count of operating an unlicensed money transmitting business in connection with substantially the same conduct alleged in the CFTC's complaint. *USA v. Pinillo*, No. 4:24-cr-06032-SAB (E.D. Wash. November 7, 2024). That case is currently pending before this Court.

**B. <u>The Solanofi Entities</u>**

1. The Solanofi Entities are each sole proprietorships operated by the Defendant. The Solanofi Entities have not been organized or operated pursuant to

the laws of any jurisdiction, nor have they been registered with the CFTC in any capacity. ECF No. 1 at ¶ 13; Malas Dec. at ¶ 8a.

## II. RELEVANT PROCEDURAL HISTORY

### A. CFTC v. Pinillo

On December 9, 2024, the CFTC filed a one-count Complaint against Pinillo alleging that he violated the anti-fraud provisions of Section 6(c)(1) Act, 7 U.S.C. § 9(1), and Commission Regulation ("Regulation") 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2024). ECF No. 1.

On December 21, 2024, the CFTC served the Defendant with the Summons (ECF No. 2); Complaint (ECF No. 1); and Civil Cover Sheet in this matter by personally delivering copies of said documents to Defendant. Service was made by an individual who is over 18 years old and not a party to this matter. ECF No. 3.

Defendant was required to plead or otherwise respond to the Complaint by January 13, 2025, pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i). Despite being served, Defendant failed to appear, answer the Complaint, or otherwise defend this action.

In accordance with Local Civil Rule 55(a)(1), on January 14, 2025, the CFTC provided notice to the Defendant of the CFTC's intention to move for entry of default and entry of default judgment thereafter via his personal email and FedEx. Kenmotsu Dec. at ¶ 6.

On January 29, 2025, the Commission requested that the Clerk of the Court enter a default against Pinillo pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 4. The Clerk of the Court entered an Order of Default against Pinillo on January 30, 2025. ECF No. 5.

On April 3, 2025, the CFTC filed a Motion for Leave to File Over-Length Motion for Entry of Default Judgment against Defendant Francier Obando Pinillo, copies of which were sent to the Defendant via email and FedEx. ECF No. 6.

On April 7, 32025, the Court granted Plaintiff's Motion for Leave to File an Overlength Motion for Entry of Default. ECF No. 7. The CFTC now moves for a final default judgment against the Defendant.

**B. <u>Parallel Criminal Matter-USA v. Pinillo, No. 4:24-cr-06032-SAB</u>**

Previously, on November 7, 2024, the U.S. Attorney's Office for the Eastern District of Washington filed an indictment against Pinillo. *USA v. Pinillo*, No. 4:24-cr-06032-SAB (E.D. Wash. November 7, 2024). That case is currently pending before this Court.

On July 1, 2025, the Hon. James A. Goeke held a hearing in the Defendant's criminal case to determine if the Defendant violated the terms of his pretrial release by contacting two witnesses in the criminal case and soliciting one of the witnesses for "funds in the amount of $200,000 fraudulently via WhatsApp." The Defendant was also accused of using multiple Facebook accounts to solicit funds

"fraudulently for an orphanage through the internet." *USA v. Pinillo*, No. 4:24-cr-06032-SAB (E.D. Wash. November 7, 2024) ECF No. 60 at 2-3.

The Court issued an order on July 11, 2025 and found probable cause to believe that the Defendant: (1) committed wire fraud while on pretrial release and (2) contacted a listed witness in the criminal case. The Court revoked Defendant's pretrial release and committed him to the custody of the U.S. Marshall. *USA v. Pinillo*, No. 4:24-cr-06032-SAB (E.D. Wash. November 7, 2024). ECF No. 60 at 5-6.

## III. PLAINTIFF HAS MET THE PROCEDURAL REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 and Local Civil Rule 55 require parties to follow a two-step process to obtain entry of a default judgment. First, a party must file a motion for entry of default and obtain a Clerk's Order of Default. Second, a party must then apply to the court for a default judgment. Fed. R. Civ. P. 55(b) and LCivR 55(b). LCivR 55(b)(1) further requires that the moving party include a declaration that: (A) specifies that the defaulting party is neither an infant, nor an incompetent person; and (B) attests that the Servicemember's Civil Relief Act of 1940 ("SCRA"), as amended, (50 U.S.C. App § 521) does not apply. LCivR 55(b)(1).

Here, Plaintiff has satisfied all of the procedural requirements for entry of a default judgment against the Defendant. As set forth in the Declaration of Karen

Kenmotsu, the Defendant is neither an infant, nor is he an incompetent person. Moreover, the Defendant is also not an active duty servicemember, so the SCRA does not apply. Kenmotsu Dec. at ¶ 9.

## IV. STATEMENT OF RELEVANT FACTS

From at least November 1, 2021 to December 31, 2023, Pinillo, individually and doing business as the Solanofi Entities, engaged in a fraudulent multilevel marketing ("MLM") scheme involving digital assets, using the Solanofi online application, Facebook, YouTube, Telegram, "X," Instagram and other social media and in-person presentations to solicit at least $1,552,060.77 in digital and fiat assets[1] from approximately 155 customers including congregants of a Spanish-language church in Pasco, Washington, where Defendant was the pastor. Defendant falsely claimed to trade digital assets, including Bitcoin ("BTC"), on behalf of customers. ECF No. 1 at ¶¶ 1, 17-19, 30-31; Malas Dec. at ¶ 14.

[1] Defendant accepted the following digital assets from his customers: Bitcoin ("BTC"), Dogecoin ("DOGE"), Ethereum ("ETH"), Shiba Inu ("SHIB"), Solana ("SOL"), and Tether ("USDT").

At different times throughout the Relevant Period, Defendant falsely represented to customers that he operated a leveraged staking[2] investment in digital assets, and targeted unsophisticated customers who had little to no experience in digital asset transactions or commodity interest trading, and who were unfamiliar with how an investment in staking digital assets occurred. ECF No. 1 at ¶ 18; Malas Dec. at ¶ 15.

On or about March 24, 2023, Defendant falsely represented to customers that Solanofi had "provided much liquidity" to the bankrupt cryptocurrency exchange FTX, and that is why Solanofi was able to promise higher staking returns to its customers. Malas Dec. at ¶ 16.

### A. Defendant Made False Statements to Customers

Defendant guaranteed customers profits of up to 34.9% per month by allegedly trading digital assets, including BTC, via the "Solanofi platform." Malas Dec. at ¶ 17. Defendant further represented that trading on the Solanofi platform was "risk free." ECF No. 1 at ¶ 2; Malas Dec. at ¶ 41.

[2] Staking is a decentralized finance ("DeFi") strategy to maximize yield, whereby the holder of a digital asset loops their digital asset's liquidity through several protocols, staking their tokens to mint additional tokens or stablecoins, and then depositing it with a lending protocol to borrow more and repeat the process.

Once customers decided to invest, Defendant, doing business as the Solanofi Entities, directed customers to transfer their digital and fiat assets into digital wallets and bank accounts controlled by the Defendant. Malas Dec. at ¶ 18.

Defendant provided customers with access to an online application that purported to display typical account statement information, including account balances and purported profits. The online application was also supposed to allow customers to withdraw funds from their accounts, including their principal investment amount and purported profits. In fact, no Solanofi Customers were able to use the online application to withdraw any funds. ECF No. 1 at ¶¶ 3, 25, 28, 41; Malas Dec. at ¶ 19.

To entice customers to involve friends and family in his fraudulent scheme, Defendant utilized an MLM component whereby he represented that he would pay a 5%-15% "referral fee" to customers who referred additional customers. Malas Dec. at ¶ 20.

### B. Defendant Did Not Trade On Behalf of Customers

During the Relevant Period, there was no trading platform, no trading took place, no profits were generated, and Defendant misappropriated assets that customers transferred to Defendant by converting them to his own use and denying customers' attempts to withdraw funds. *Id.* at ¶ 21.

Defendant used the mails or instrumentalities of interstate commerce in his solicitation of investors, including emails, text messages, and interstate wire transfers. ECF No. 1 at ¶ 5, 24, 32-33, 37-39.

### C. <u>Defendant Misappropriated Customer Funds and Assets</u>

The gross amount of digital assets received and deposited into the private digital asset wallets Defendant provided to prospective customers was approximately $5.9 million. Malas Dec. at ¶ 9.

Defendant did not transfer any of the digital assets or fiat currency he received from customers to any commodity interest trading account. *Id.* at ¶ 35.

Defendant transferred a total of $4,054,551,90 of the digital assets received and deposited into the digital wallets he allegedly controlled to at least 23 accounts held by individuals at Exchange "A." These individuals primarily reside in Colombia and have no known connection to commodities trading. *Id.* at ¶ 52.

Of the approximately 180 customers who responded to the CFTC's questionnaire, 155 customers transferred $1,552,060.77 to the Defendant. Despite numerous attempts and requests to withdraw their funds and assets, the total amount returned to customers was $0.00. *Id.* at ¶¶ 11-12. Since $1,552,060.77 is the confirmed amount of funds and assets known to have been provided to the Defendant by customers, Plaintiff is using this amount in its restitution calculation.

During the Relevant Period, when customers attempted to withdraw their funds, Defendant provided a series of excuses for not allowing them to withdraw their assets. For example, Defendant claimed in a post on the Solanofi website that there were technical issues with the Solanofi application. Defendant claimed that despite the technical difficulties, customers would continue to receive profits and interest in their investments. *Id.* at ¶ 50.

In late 2023, Defendant represented to customers that their assets were sent to FTX, the bankrupt digital asset exchange. *Id.* at ¶ 15. Defendant further claimed that, as a result, the customers' assets were frozen due to the bankruptcy proceedings, and that was why he could not return the customers' assets. *Id.* at ¶¶ 47, 51. This representation was false since neither the Defendant nor the Solanofi Entities are listed as claimants in the FTX bankruptcy proceedings. *Id*. at 12, 51.

**D. Defendant's Misrepresentations and Omissions**

During the course of his solicitations, Defendant knowingly or recklessly made false and misleading misrepresentations of material fact, including but not limited to: (1) falsely claiming that the Solanofi Entities were engaged in leveraged staking on behalf of customers; (2) providing false trade account statements to customers via the Solanofi online application; (3) falsely guaranteeing customers profits of up to 34.9% per month, compounded monthly; (4) falsely claiming there was no risk of loss in trading digital asset commodities; (5) misrepresenting the

potential profit amount in solicitation materials; (6) claiming that customers would be able to withdraw their assets, including their principal investment amount and their profits; and (7) failing to disclose that Defendant misappropriated all of the assets he received from customers.

By this conduct, and the conduct further described herein, the Defendant has engaged, is engaging, and/or is about to engage in acts and practices in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Commission Regulation 180.1(a)(1)-(3), 17 C.F.R. §180.1(a)(1)-(3) (2024).

## V. ARGUMENT

### A. The CFTC Has Established Jurisdiction and Venue

This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Pinillo resided and transacted business in this District, Pinillo's victims resided in this District, and certain transactions, acts, practices and courses of business alleged in the Complaint occurred within this District, among other places.

**B. Default Judgment is Warranted Against the Defendant**

Federal Rule of Civil Procedure 55(b)(2) provides for entry of a default judgment by the Court following entry of a default by the court clerk under Federal Rule of Civil Procedure 55(a). A failure to make a timely answer to a properly served complaint will justify the entry of a default judgment. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended*, 807 F.2d 1514 (9th Cir. 1987); *U.S. v. Rivera*, No. 03-cv-2520, 2003 WL 22429482, at *5 (C.D. Cal. July 18, 2003) ("[w]here a party fails to plead or otherwise defend against a complaint, after entry of default, default judgment may be entered against him.").

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b)(2) and is left to the trial court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). As the Ninth Circuit held in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), a district court should consider the following factors – referred to as *Eitel* factors – in determining whether to enter default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72. "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex. Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999). A party seeking a default judgment must state a claim upon which it may recover. *PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the Complaint are taken as true, except for those allegations relating to damages. *Id.* (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)); *see also Benny*, 799 F.2d at 495.

### C. <u>The Eitel Factors Strongly Favor Entry of Default Judgment against the Defendant</u>

As noted above, courts in the Ninth Circuit consider the seven *Eitel* factors in determining whether to enter default judgment. The factors all support the entry of default judgment in this case.

#### 1. Factor 1: The CFTC Will Suffer Prejudice Absent Entry of Default Judgment

Regarding the first *Eitel* factor, the CFTC will be prejudiced if default judgment is not entered because it "will be deprived of the opportunity to obtain judicial resolution of its claim[s]." *Sky Billiards, Inc. v. Loong Star, Inc.*, No. 14-

cv-921, 2016 WL 6661175, at *5 (C.D. Cal. Mar. 17, 2016); *see also Halsey v. Colonial Asset Mgmt.*, No. 13-cv-02025, 2014 WL 12601015, at *4 (C.D. Cal. July 17, 2014) (concluding plaintiff lacked remedy in absence of default judgment where defendant failed to file responsive pleading). The CFTC has strong, congressionally mandated interests in enforcing the Act and Regulations and deterring future wrongdoing through penalties and other monetary relief. The Defendant' refusal to appear and defend will deprive the CFTC of the opportunity to enforce its rules and obtain judgment on the merits, thus the first Eitel factor is met. *See SEC v. Fortitude Grp.,* No. 16-cv-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied).

### 2. Factors 2 and 3: The Merits of the CFTC's Claims and Sufficiency of the Complaint Weigh in Favor of Default Judgment

The second and third *Eitel* factors, involving the merits of the claims and sufficiency of the Complaint, require that a plaintiff "state a claim on which [it] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default." *Bd. of Trs. of Sheet Metal Workers v. Moak*, No.

11-cv–4620, 2012 WL 5379565, at *2 (N.D. Cal. Oct. 31, 2012) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.1977).

Here, the CFTC's Complaint pleads facts sufficient to show that Pinillo committed fraud by deceptive device or contrivance in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, to:

> [U]se or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . .

17 C.F.R. § 180.1(a)(1)-(3), provides:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
>
> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

Digital asset commodities such as Bitcoin are encompassed in the definition of a "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9), and contracts for their sale are subject to the prohibitions of 7 U.S.C. § 9(1) of the Act, and 17 C.F.R. § 180.1(a). *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 217 (E.D.N.Y. 2018), *recons. denied*, 321 F. Supp. 3d 366, 367-68 (E.D.N.Y. 2018) (finding that virtual currencies may be regulated by the CFTC as a "commodity" as the term "commodity" "encompasses virtual currency both in economic function and in the language of the [Act]" which defines a "commodity" as "all other goods and articles . . . in which contracts for future delivery are presently or in the future dealt in."); *CFTC v. My Big Coin Pay*, 334 F. Supp. 3d 492, 498 (D. Mass. 2018) (in denying a motion to dismiss, the Court held that "both Section 6(c)(1) [7 U.S.C. § 9(1)] and Regulation 180.1 explicitly prohibit fraud even in the absence of market manipulation"); *In re BFXNA Inc*., CFTC No. 16-19, 2016 WL 3137612, at *5 (June 2, 2016) (consent order) ("Bitcoin and other virtual currencies are encompassed in the definition [of the term "commodity" under 7 U.S.C. § 1a(9)] and properly defined as commodities, and are therefore subject as a commodity to applicable provisions of the Act and Regulations.").

To prove a violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3), the Commission need only show that the Defendant: (1) engaged in prohibited conduct (i.e., employed a fraudulent scheme, made material misrepresentations or

materially misleading omissions, or misappropriated customer funds); (2) in connection with the sale of a commodity in interstate commerce; and (3) with scienter. *See, e.g.*, *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018) (holding Section 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) were violated by misappropriating funds and fraudulent misrepresentations in connection with virtual currency transactions); *see also, CFTC v. Gelfman Blueprint, Inc.,* No. 17-cv-7181, 2018 WL 6320656, at *8-9 (S.D.N.Y. Oct. 16, 2018) (entering default judgment against defendants who violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by fraudulently soliciting and receiving funds from customers for the purpose of entering into contracts of sale of Bitcoin through electronic web-based trading platforms). Misappropriation of customer funds constitutes fraud under 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a). *See CFTC v. Global Precious Metals Trading Co.*, No. 13-cv-21708, 2013 WL 5212237, at *5 (S.D. Fla. Sept. 12, 2013) (default judgment) (defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1) by misappropriating funds and making misrepresentations and omissions).[3] A statement of fact is material if "there is a

---

[3] Courts have applied the anti-fraud provisions of 7 U.S.C. § 9(1) and Regulation 180.1 to digital asset commodity transactions. *See, CFTC v. WorldWideMarkets, Ltd.*, No. 21-CV-20715 , 2022 WL 3535993, at *13 (D.N.J. Aug. 18, 2022); *CFTC*

substantial likelihood that a reasonable investor would consider it important in making an investment decision." *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 111 (2d Cir. 1986) (in securities law context).

**a) The Defendant Engaged in a Prohibited Fraudulent Scheme**

Here, the Defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) by, among other things, intentionally or recklessly making material false representations and omissions and misappropriating customer funds in connection with a contract of sale of a commodity in interstate commerce, including by: (1) falsely claiming to trade digital assets, including Bitcoin, on behalf of customers; (2) falsely representing to customers that he operated a leveraged staking investment in digital assets; (3) falsely guaranteeing customers profits of up to 34.9% per month, compounded monthly; (4) falsely representing that trading on the Solanofi platform was "risk free"; (5) providing false trading account records to customers; (6) falsely representing that customers would be able to withdraw their funds and profits after a certain amount of time; and (7) omitting to inform customers that funds sent in by customers were misappropriated.

---

*v. Tinoco,* No. 21-CV-00237, 2022 WL 1670031, at *8 (W.D. Tex. Mar. 25, 2022)(consent order); *CFTC v. Tallinex*, No. 17-CV-00483, 2018 WL 3350347, at *4–5 (D. Utah July 9, 2018)(default order).

### b) The Defendant Conducted His Fraudulent Scheme in Connection with the Sale of Commodities in Interstate Commerce

The "in connection" with requirement of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) is satisfied where the contract of sale of a commodity in interstate commerce and the fraud are not independent events. *Cf. SEC v. Zandford*, 535 U.S. 813, 818-26 (2002) (finding, in the securities context, the "in connection with" requirement was satisfied where a broker sold customer securities for the purpose of transferring the proceeds to his own account); *SEC v. DiBella*, No. 04-cv-1342, 2005 WL 3215899, at *6 (D. Conn. Nov. 29, 2005) ("A fraudulent scheme that coincides with the sale of securities satisfies the 'in connection with' requirement of section 10(b) [of the Exchange Act] and Rule 10b-5." (citing *Zandford*, 535 U.S. at 825)). The "in connection with" requirement is construed broadly. *See, e.g.*, *SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992); *see also Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation ("Final Rule")*, 76 Fed. Reg. 41,398, 41,405 (July 14, 2011) ("The Commission interprets the words 'in connection with' broadly, not technically or restrictively.").

In this case, the fraudulent conduct occurred, and the material misrepresentations and omissions were made, in connection with contracts of sale of commodities in interstate commerce.

**c) The Defendant Acted with Scienter**

The level of scienter required to plead a cause of action under 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) is reckless or intentional. *CFTC v. Kraft*, 153 F. Supp. 3d 996, 1007 (citing CFTC's *Final Rule*, 76 Fed. Reg. at 41,404). This standard is satisfied if a defendant "intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care." *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). It is also satisfied when a defendant's conduct involves "highly unreasonable omissions or misrepresentations…that present a danger of misleading [customers] which is either known to the Defendant or so obvious that Defendant must have been aware of it." *Id*. (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, the Defendant acted knowingly, or, at the very least, with reckless disregard for the truth. Defendant solicited customers to invest in the Solanofi Entities and knew, or recklessly disregarded, that representations concerning profitability, risk, and ability to withdraw funds were false. The Defendant accepted customer funds knowing that: (i) Defendant was not trading in the manner represented to customers; (ii) the Solanofi Entities were not legitimate; (iii) there was no leveraged staking platform; (iv) the online account statements

were fabricated; and (v) Defendant was misappropriating customer funds. Accordingly, the Defendant acted with the requisite scienter.

Therefore, the Complaint pleads sufficient facts to show that the Defendant violated the anti-fraud provisions of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3). Thus, this factor also weighs in favor of granting a default judgment.

**3. Factor 4: The Sum of Money at Stake in the Action is Not Disproportionately Large**

The fourth *Eitel* factor, "the amount of money at stake in relation to the seriousness of the defendant's conduct," weighs in favor of a default judgment. *PepsiCo, Inc. v. Los Potros Dist. Ctr., LLC*, No. 07-cv-2425, 2008 WL 942283, at *3 (D. Ariz. Apr. 7, 2008). The Defendant's fraudulent conduct constitutes core violations of the Act and Regulations. As a pastor to many of his victims, Defendant's actions were particularly egregious. Defendant took advantage of the trust placed in him by his parishioners to bilk them out of their hard-earned funds. Therefore, given the seriousness of the Defendant's conduct, it is unlikely that the money at stake will outweigh the seriousness of the Defendant's conduct. The relief Plaintiff seeks is reasonable, is authorized by the CEA and Regulations, and is consistent with prior default judgment awards in similar CFTC actions. *See e.g.*, *CFTC v. Aipu Ltd., et al.*, No. 3:24-cv-5815-SAB, 2025 WL 1489729, at *14-15 (W.D. Wash. May 22, 2025) (entering default judgment for CFTC and ordering Defendants to pay restitution of $4,621,056 on a joint and several basis, and a civil

monetary of $13,863,170 which represented triple the monetary gain); *CFTC v. Carmona*, et al., No. 2:23-cv-04015-MRA-RAO, 2024 WL 4744021, at *13-16 (C.D. Cal. October 21, 2024) (entering default judgment for CFTC and ordering each of the four defendants to pay restitution of $1,098,920 on a joint and several basis, and each of the four defendants to pay a civil monetary penalty of $1,000,000 on an individual basis); *CFTC v. Main and Prospect Capital, LLC*, No. 2:19-cv-09736-FLA-(AFMx), 2022 WL 17666395, at *7-8 (C.D. Cal. October 21, 2024) (entering default judgment for CFTC and ordering the defendants to pay restitution of $1,906,395 on a joint and several basis, and a civil monetary penalty of $5,719,185 representing triple the monetary gain); *CFTC v. Schiera,* No. CV05 2660 CAS, 2006 WL 4586786, at *7-9 (S.D. Cal. Dec. 11, 2006) (entering default judgment and ordering defendants to disgorge $3 million and pay a $9 million civil monetary penalty). *See also, Bd. Of Trs. Of Laborers Health & Welfare Tr. Fund for N. Cal. v. Cazadores Constr., Inc.,* No. 17-cv-05242, 2018 WL 986020, at *4 (N.D. Cal. Feb. 20, 2018)) ("where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate.") (citing *Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. 10-cv-2212, 2011 WL 2600898 at *2 (N.D. Cal. Jun. 30, 2011)). Accordingly, the fourth *Eitel* factor favors entry of default judgment.

### 4. Factor 5: There is Minimal Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987). Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the Clerk of the Court entered default against the Defendant. No dispute has been raised regarding the material facts in the Complaint, and the likelihood that any genuine issue may exist is, at best, remote. *See Sky Billiards, Inc.*, 2016 WL 6661175, at *5 (defendants' failure to respond "supports the conclusion that the possibility of a dispute as to the material facts is minimal"). Therefore, this factor is met and weighs in favor of a default judgment.

### 5. Factor 6: There is No Evidence that Defendant Defaulted Due to Excusable Neglect

Defendant's failure to respond to the Complaint is not the result of "excusable neglect." The CFTC has properly prosecuted this case since its inception and provided required notices to Defendant at every turn, while the Defendant has failed to answer, plead or defend in this action. As discussed above,

the Defendant was properly served with the Summons, the Complaint, the notice of entry of default, and all associated papers. Kenmotsu Dec. at ¶ 3.

No facts suggest that the Defendant's failure to plead or respond to the Complaint is due to excusable neglect. Defendant has been properly served with all relevant documents in this matter and has chosen not to participate in this litigation. Kenmotsu Dec. at ¶ 3. In sum, the Defendant has been given multiple opportunities to defend this case and has chosen not to do so. Therefore, this factor weighs in favor of default judgment. *See Halsey* 2014 WL 12601015 at *4 ("Defendant was served with the summons and Complaint but has failed to appear in this action. Therefore, there is no indication that Defendant's default is due to excusable neglect, or that the material facts are in dispute.").

### 6. Factor 7: Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment

Finally, the seventh *Eitel* factor—the general preference for deciding cases on the merits—does not counsel against a default judgment here because "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177 (noting the on-the-merits "preference, standing alone, is not dispositive") (citation omitted). In addition, countervailing interests outweigh any residual interest in preserving the remote potential for a decision on the merits. "[T]he CFTC is the statutory guardian entrusted with the enforcement of the congressional scheme for

safeguarding the public interest in commodity futures markets." *See Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (internal quotations and citations omitted). Absent a default judgment and injunctive relief, the CFTC will be unable to address and deter the misconduct at issue. Thus, the seventh factor weighs in favor of a default judgment.

## VI. THE REMEDIES PLAINTIFF SEEKS ARE APPROPRIATE

7 U.S.C. § 13a-1(a) empowers the Commission to seek civil injunctive relief and civil monetary penalties from defendants found to have violated the Act. Here, the Commission seeks an order: (1) finding that the Defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) (2024); (2) a permanent injunction against Defendant preventing him from committing future violations of the Act or Regulations; (3) civil monetary penalties; (4) restitution; and (5) other equitable relief.

### A. <u>A Permanent Injunction is Appropriate</u>

The CFTC seeks permanent injunctive relief against the Defendant under 7 U.S.C. § 13a-1(a) to prohibit future violations of the Act and Regulations. Pursuant to 7 U.S.C. § 13a-1(a), "[t]he CFTC is entitled to a permanent injunction upon a showing that a violation [of the Act or regulations] has occurred and is likely to continue unless enjoined." *See CFTC v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012). As a result, "[o]nce a violation of the Act has been shown, the

moving party need only show the existence of some reasonable likelihood of future violations." *CFTC v. Co Petro Mktg. Grp., Inc*., 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982).

The Court may infer a likelihood of future violations of the Act and Regulations from past unlawful conduct. *See Driver*, 877 F. Supp. 2d at 981 ("In drawing such an inference from past violations, 'the Court should look at the totality of the circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant.'") (quoting *Co Petro,* 502 F. Supp. at 818). In deciding whether to issue a permanent injunction, the Court may also consider "the egregiousness of the defendant's actions, whether the violation was isolated or recurrent, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of his conduct's wrongfulness, and the likelihood that the defendant's occupation will present opportunities for future violations." *Driver*, 877 F. Supp. 2d at 981-982.

As alleged in the complaint and described above, the Defendant's conduct was neither isolated nor accidental. The Defendant engaged in egregious and systematic violations of the Act and a Regulation by engaging in a scheme to defraud customers through a series of material misrepresentations and omissions, and by misappropriating customer funds. (ECF No. 1 at ¶¶ 31-39). As a Pastor, the Defendant has ready access to vulnerable churchgoers who afford him great

trust due to his position. Defendant's violation of the terms of his pretrial release in his criminal case (contacting a listed witness, soliciting donations from churchgoers for a purportedly fake orphanage) is an example of the Defendant's continued misuse of his Pastor status to carry on with his fraudulent activities. It is therefore appropriate to conclude that the Defendant will continue his pattern of wrongdoing unless permanently enjoined by the Court. Accordingly, a permanent injunction is necessary to ensure that the public interest is adequately protected and to enjoin the Defendant from further violations of the Act and its Regulations. *See CFTC v. Hunt,* 591 F.2d 1211, 1220 (7th Cir. 1979) (finding district court erred in denying request for injunctive relief where defendants engaged in "systematic and carefully preconceived" violations of the Act yet "consistently maintained that their conduct was blameless.").

**B. <u>Restitution</u>**

7 U.S.C. § 13a-1(d)(3) authorizes the Commission to seek and the Court to order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." Restitution exists to restore the status quo and make the injured party whole. *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (equitable restitution consists of "restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant"). Accordingly, courts calculate restitution "as the difference between what [a defendant] obtained and the amount

customers have already received back." *CFTC v. Ross*, No. 09-cv-5443, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014). *See also CFTC v. Leighton*, No. 2:12-cv-04012, 2013 WL 4101874, at *9 (C.D. Cal. July 8, 2013) (ordering restitution equal to the "net losses to pool participants"); *CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339, 2005 WL 1130588, at *10 ("The appropriate amount of restitution is the total amount invested by customers, less refunds made by the defendants to the customers."). The court may rely on declarations in lieu of conducting an evidentiary hearing to ascertain damages. *Id* at *13 (finding "no reason to hold an evidentiary hearing on damages" because the Commission's documentary evidence was sufficient to support entry of a default judgment). The Commission's burden in proving up damages is "relatively lenient" and need "only prove that the compensation sought relates to the damages that flow naturally from the well-pleaded injuries." *SEC v. Pedras*, No. 2:13-cv-07932-GAF (MRWx), 2014 WL 12597332, at *8 (C.D. Cal. April 16, 2014) (citations omitted).

Here, the Defendant's illegal conduct proximately caused customers to incur net losses totaling $1,552,060.77 which reflects the total funds the Defendant fraudulently received ($1,552,060.77), minus the funds they returned to Customers ($0.00). Malas Dec. at ¶ 12. Accordingly, the Defendant should be ordered to pay restitution of $1,552,060.77, which represents the total confirmed customer losses proximately

caused by the Defendant's violations of the CEA and Regulations, plus post-judgment interest thereon.

**C. <u>Civil Monetary Penalty</u>**

Pursuant to 7 U.S.C. § 13a-1(d)(1)(A) and 17 C.F.R. § 143.8(b)(1) (2024), the Commission is authorized to seek a civil monetary penalty ("CMP") equal to the higher of triple the defendant's monetary gain from each violation of the Act or Regulations, or $227,220 per violation (for violations committed on or after November 2, 2015).[4] A court may "fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent." *CFTC v. Trimble*, No. 11–cv–02887-PAB-KMT, 2013 WL 317576, at *9 (D. Colo. Jan. 28, 2013) (citing *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)).

Courts consider numerous factors in determining an appropriate civil monetary penalty for violations of the CEA and Regulations, including the nature of the violations, whether defendants acted with scienter, the consequences of the violations, the financial benefits to defendants, and the harm to customers. *CFTC*

[4] Pursuant to the associated regulation, 17 C.F.R. § 143.8(b)(1) (2024) the allowable inflation-adjusted civil monetary penalty is $227,220 per violation of the Act (effective Jan. 30, 2025) for non-manipulation claims brought in federal injunctive actions under 7 U.S.C. § 13a-1.

*v. Am. Bullion Exch. ABEX Corp. et al.*, No. SACV 10-1876, WL 3896023, at *18 (C.D. Cal. Aug. 7, 2015) (*citing CFTC v. Arrington*, 2014 WL 685331, at *22 (D. Neb. Jan. 28, 2014)). Courts routinely award significant CMPs in cases involving conduct that violates the core provisions of the CEA, such as fraud. *See, e.g.*, *CFTC v. Battoo*, No. 12-cv-07127, 2016 WL 3059856, at *13 (N.D. Ill. Jan. 11, 2016) (entering a default judgment and ordering the Defaulting Defendants to pay a CMP of $147 million, triple the Defaulting Defendants' gain of $49 million). Courts have determined that "a high civil monetary penalty is warranted where customers have been defrauded of a substantial amount of money." *Driver*, 877 F. Supp. 2d at 982.

This case warrants a significant civil monetary penalty against the Defendant. The Defendant's conduct was intentional, serious, and caused significant harm to customers.[5] Accordingly, the record would support a CMP of triple the gain the Defendant reaped from the fraud, namely $4,656,182. *See CFTC v. Premium Income Corp.*, No. 3:05-cv-0416B, 2007 WL 429092, at *14 (N.D. Tex. Jan. 26, 2007)

[5] The CFTC is also entitled to post-judgment interest on a civil monetary penalty award ordered by the Court. Post-judgment interest accrues at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment. See 28 U.S.C. § 1961(a).

(imposing civil monetary penalty of "triple the monetary gain as measured by triple the amount of customer funds received by [defendants], less the funds returned to customers"). *See also*, *Driver*, 877 F. Supp. 2d at 981, 983. (In the context of granting the CFTC's motion for summary judgment, the court ordered Defendants to pay $9,562,488 in restitution and a CMP of $31.8 million which was three times Defendants' gains).

The monetary gains to the Defendant are calculated as the total amount the Defendant received from customers ($1,552,060.77) less the funds returned to customers by the Defendant ($0.00), or $1,552,060.77. Triple the monetary gain to the Defendant is $4,656,182 (i.e., $1,552,060.77*3). Consequently, the CFTC respectfully moves the Court to order the Defendant to pay a CMP of $4,656,182. Such a penalty is within the Court's statutory authority to impose, will protect the CFTC's regulatory scheme and integrity of the markets, and will send a clear message to deter others from engaging in a similar, pervasive fraudulent scheme.

**D. <u>A Permanent Trading Ban is Appropriate</u>**

In addition, the Court should invoke its discretion under Section 6c(c) of the Act, 7 U.S.C. § 13a-1(c), to require the Defendant to "take such action as is necessary to remove the danger of violation of this Act," by permanently prohibiting the Defendant from engaging in commodity trading activities, both for himself and on behalf of third parties, which might allow him to engage in future

violations of the Act. *In re Staryk,* [2003- 2004 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,826 at 56,452 (CFTC July 23, 2004) (if there is a nexus between the respondent's violations and the integrity of the market, the term of the prohibition turns on the gravity of the violations); *cf. SEC v. Holschuh*, 694 F.2d 130, 144 (in assessing the likelihood of future violations, a court should consider the likelihood that defendant's customary business activities might again involve them in illegal transactions).

A permanent trading prohibition is appropriate because of the intentional and egregious nature of the Defendant's conduct that spanned over two years and involved approximately 1500 victims. A permanent trading ban will serve to discourage future violations and prevent harm to other customers. *See CFTC v. Safevest LLC*, No. 08-cv-00474, 2009 WL 2448114, *10 (C.D. Cal. July 13, 2009) (entering default order granting permanent injunction for issuing false reports and misappropriation of commodity customer funds and included a permanent personal trading ban). Therefore, this Court should find that the broad injunction that the CFTC requests here "is necessary to remove the danger of violation of the Act," and that such an injunction would effectuate the manifest objectives of the anti-fraud provisions of the Act. 7 U.S.C. § 13a-1(c).

## VII. CONCLUSION

For the reasons stated above, the CFTC respectfully requests that this Court enter an order of default judgment against the Defendant that permanently enjoins him from further violations of the Act and Regulations; orders him to pay restitution in the amount of $1,552,060.77; a civil monetary penalty in the amount of $4,656,182; and imposes such other equitable relief as this Court deems appropriate.

Executed on: February 9, 2026, Respectfully submitted,

By: /s/ Timothy J. Mulreany

Timothy J. Mulreany
Senior Investigative Counsel
MD Bar No. 8812160123
**Commodity Futures Trading Commission**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5306
tmulreany@cftc.gov

Karen Kenmotsu
Trial Attorney
NY Bar No. 2599306
**Commodity Futures Trading Commission**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5120
kkenmotsu@cftc.gov

Paul G. Hayeck
Acting Director
MA Bar No. 554815
**Commodity Futures Trading Commission**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5312
phayeck@cftc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, I electronically filed the foregoing motion and proposed order with the Clerk of the Court using the CM/ECF system. I also hereby certify that on February 10, 2026, I caused the foregoing documents to be sent by FedEx and email to the following non-CM/ECF participants:

Francier Obando Pinillo
c/o Benton County Jail
7122 W. Okanogan Place, Suite B110
Kennewick, WA 99336
*francierο77@gmail.com*

Courtesy Copy Sent To:

Michael Patrick Vander Sys
Fortitude Law PLLC
7105 West Hood Place
Suite A101
Kennewick, WA 99336-6714
509-440-2195
mike@fortitudelawpllc.com
*Defendant's Attorney in Case No. 4:24-cr-06032-SAB-1*

/s/ Timothy J. Mulreany
Timothy J. Mulreany